**Leroy JEFFERSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18216.**

United States Court of Appeals Ninth Circuit.

Jan. 5, 1965.

Rehearing Denied Feb. 12, 1965.

Isabella H. Grant, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Terry J. Hatter, Jr., Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before ORR, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

On February 18, 1959, the Grand Jury returned an indictment containing twenty-one counts. Count One charged at a time and place unknown to the Grand Jury the appellant, Leroy Jefferson, Fred Jones, Leroy Lemons, Jane Doe Marie, John Doe Vic, John Doe Tommy, Clarence Criss, William Catlett, Patricia Catlett, Clark Elegan, Gerald Elegan, Richard Smith, Berthelma Nolen, aka Victoria Johns, Lou Jones, aka Lulu Parker, Leon T. Graves, Ernest Duke Arnold and John Doe Otis thereinafter referred to as the defendants] did unlawfully conspire with Rose Holland, Fred Berry, Henrietta Lee, Juanita Smith, Tom Hicks, deceased, Velmer Dorsey, Julia Dorsey, Dolores Mitchell, Theodore Glass, Will Riley, Cecil Nunn, Wallis R. Hanks, and others to the Grand Jury unknown, all of which persons named and unknown, thereinafter referred to as co-conspirators, the co-conspirators not being named as defendants nor indicted therein, fraudulently and knowingly received, concealed, sold, and facilitated the concealment and sale of certain quantities of narcotic drugs, to wit: heroin and cocaine, knowing the same to have been imported into the United States contrary to law, in violation of 21 U.S.C. § 174. Fifty-seven overt acts were charged under Count One. The first fifty-five overt acts covered a period of time from April 1, 1957 through December 16, 1958; overt acts 56 and 57 are alleged to have occurred in January of 1958. It appears clear from the record that overt acts 56 and 57 occurred in January, 1959. In addition to Count One, appellant was charged in seven of the remaining twenty counts.

Counts Two and Five charged appellant with selling and facilitating the sale of cocaine in violation of 21 U.S.C. § 174. Counts Three and Six charged appellant

with purchasing and dispensing of cocaine not in the original stamped packages in violation of 26 U.S.C. § 4704(a). Counts Four and Seven charged appellant with dispensing of cocaine not in the original stamped package in violation of 26 U.S.C. § 4705. Count Eight charged appellant with use of a communication facility to violate the narcotic laws in violation of 18 U.S.C. § 1403.

Following trial to a jury appellant and co-defendant Clarence Criss were the only defendants found guilty of the offense charged in Count One. Defendants Lou Jones, Leroy Lemons, Richard Smith and Ernest Duke Arnold were found not guilty. The jury was unable to agree as to the guilt or innocence of the other defendants charged in Count One.

During the trial prosecuting counsel stated to the District Court that no proof would be offered on the other counts [Counts Two through Eight] in which the appellant was charged.

Judgment of conviction as charged in Count One was pronounced and appellant was sentenced to imprisonment for a term of twenty years.

The judgment of conviction pronounced upon appellant, after reciting that the appellant had been convicted upon his plea of not guilty and a verdict of guilty as to Count One of the offense of violation of Title 21 U.S.C. § 174, in part states that the appellant:

"did unlawfully conspire with a certain number of co-conspirators to fraudulently and knowingly receive, conceal, sell, and facilitate the concealment and sale of certain quantities of narcotic drugs, to wit, heroin and cocaine, knowing the same to have been imported into the United States contrary to law, and to effect the objectives of conspiracy did, during the period beginning on or about April 1, 1957 through January 14,

1958,[1] do a number of overt acts, as charged in Count One (1) of the indictment".

The government states in its brief:

"It would appear from the record below that legally the conspiracy alleged in the instant case did indeed continue from April of 1957 until the filing of the indictment on February 18, 1959. The court below so instructed the jury."

It is also to be noted that the indictment alleges that overt act 56 occurred on or about January 4, 1958, and that overt act 57 occurred on or about January 14, 1958.

Appellant's specifications of error may be summarized as follows:

(1) That the District Court was without jurisdiction of the offense for which appellant was convicted in that:

(a) absence of evidence of the unlawful importation of any narcotic drugs;

(b) absence of evidence of possession of heroin by appellant; and

(c) absence of evidence of illegal importation of cocaine.

(2) Prejudicial error in instructing the jury;

(3) Appellant has been twice placed in jeopardy for the same offense;

(4) Errors in the admission of evidence;

(5) Errors in certain rulings and actions of the District Court;

(6) Appellant was deprived of a fair trial by prejudicial misconduct of government counsel during the course of the trial and in his argument to the jury; and

(7) Title 21 U.S.C. § 174 is unconstitutional.

■ 21 U.S.C. § 174,[2] makes it a Federal offense to import narcotic drugs il-

1. It is clear from the record that the correct date is January 14, 1959.

2. Omitting the specification of penalty, 21 U.S.C. § 174, reads as follows:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, con-

legally or to deal with such drugs knowing that the same have been illegally imported. Under the second paragraph of Section 174, the proof of possession of a narcotic drug by defendant shifts to him the burden of explaining such possession to the satisfaction of the jury. In the absence of such satisfactory explanation, the application of the statutory rule of evidence or prima facie presumption set forth in Section 174 shall be deemed sufficient to authorize conviction. In such circumstances the statutory rule of evidence or prima facie presumption furnishes sufficient proof to establish the illegal importation of the narcotic drug, and the defendant's knowledge that the narcotic drug was illegally imported. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Erwing v. United States, 323 F.2d 674 (9th Cir. 1963); United States v. Jones, 308 F.2d 26 (2nd Cir. 1962); Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962); Cellino v. United States, 276 F. 2d 941 (9th Cir. 1960); Caudillo v. United States, 253 F.2d 513 (9th Cir. 1952), C.D. Romero v. United States, 357 U.S. 931, 78 S.Ct. 1375, 2 L.Ed.2d 1373.

The term "possession" is not further defined in the section. It has not been narrowly construed by the courts. The term has been construed by the courts to embrace power to control the disposition of the drugs as well as mere physical custody. As stated in Hernandez v. United States, supra, 300 F.2d at pp. 116–117:

"We early held that 'possession' of narcotic drugs sufficient to support the inference of guilt under the statute meant 'having [the narcotic drugs] in one's control or under one's dominion.' Mullaney v. United States, 82 F.2d 638, 642 (9th Cir.

1936), and we have recently re-examined and re-affirmed this basic position. Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. denied 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199. As the Rodella opinion and the authorities which it cites amply demonstrate, it follows from this definition of 'possession' in Section 174 that so long as the evidence establishes the requisite power in the defendant to control the narcotic drugs, it is immaterial that they may not be within the defendant's immediate physical custody, or, indeed, that they may be physically in the hands of third persons—'possession' as used in this statute includes both actual and constructive possession. The power to control an object may be shared with others, and hence 'possession' for the purposes of Section 174 need not be exclusive, but may be joint. Moreover, like other facts relevant to guilt, 'possession,' actual or constructive, may be proven by circumstantial evidence. We have not hesitated to uphold convictions under Section 174 wherever either actual or constructive possession by the defendant could be honestly, fairly and conscientiously inferred. This interpretation of the statute, equating the term 'possession' with dominion and control, and permitting proof of dominion and control by circumstantial evidence, has been adopted in other circuits as well." (Footnotes omitted.)

Section 174 also makes it a Federal offense to conspire to import narcotic drugs illegally or to conspire to deal with such drugs knowing that they have been illegally imported. In this case we are concerned only with

---

trary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violatio~ ~~ the laws of the United

States, shall be imprisoned * * *

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

that part of the section which makes it illegal to conspire to deal with such drugs knowing that they have been illegally imported. Since substantive offense of dealing with such drugs under Section 174 requires proof of specific knowledge by the defendant that the drug was illegally imported, the same specific knowledge is also an essential element of the conspiracy to commit such substantive offenses. As stated in Hernandez v. United States, supra, 300 F.2d at page 120, in footnote 16:

" '[C]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.' Ingram v. United States, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959), quoting with approval from Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920 at 939. See also United States v. Bufalino, 285 F.2d 408, 416 (2d Cir. 1960) ('Evidence of the same intent or knowledge would be required to convict conspirators or to convict those charged with the substantive offense'); United States v. Ausmeier, 152 F.2d 349, 356 (2d Cir. 1945); Fulbright v. United States, 91 F.2d 210, 211 (8th Cir. 1937) ('Thus knowledge * * * is made an essential element of the substantive crime; and it must adhere in a charge of conspiracy to commit that crime'). Compare Pine v. United States, 135 F.2d 353, 357 (5th Cir. 1943), cert. denied 320 U. S. 740, 64 S.Ct. 40, 88 L.Ed. 439."

In the light of the foregoing background we proceed to consider certain of appellant's specifications of error.

The only instruction which the District Court gave to the jury in respect to the application of the provisions of Section 174 is as follows:

"[T]o prove this violation against any of the defendants the government must establish beyond a reasonable doubt that the defendants knew that the narcotic drugs which they concealed, sold, or facilitated the concealment or sale of, had been imported into the United States contrary to law. However, when the government proves the fact of possession of either heroin or cocaine by any of the defendants in this case, then, from that fact, you are at liberty to presume that the defendant knew that the heroin or the cocaine had been imported into the United States contrary to law.

"Further, if you are satisfied from the evidence beyond reasonable doubt that a conspiracy to conceal and sell or facilitate the concealment and sale of heroin or cocaine did exist, then the knowledge of one member of the conspiracy is imputed to all the members of the conspiracy. And heroin and cocaine are narcotic drugs."

It is to be noted under the second paragraph of the instruction that the jury was instructed that the knowledge of one member of the conspiracy that the heroin or cocaine had been imported into the United States contrary to law was to be imputed to all members of the conspiracy without proof of possession, either actual or constructive, of heroin or cocaine by the conspirator having such knowledge, and without proof of possession, either actual or constructive, of heroin or cocaine by the members of the conspiracy to whom such knowledge was imputed. We believe that the giving of such instruction constituted plain error, prejudicial to the substantial rights of the appellant. The indictment charged that the appellant and sixteen others conspired with twelve named, and others unnamed, as co-conspirators but not as defendants to violate Section 174. Hence, the jury was instructed that if any one of the sixteen other defendants had knowledge that the heroin or cocaine in question had been imported contrary to law, such knowledge was to be imputed to the appellant without proof of an essential element of the crime charged, to wit: his knowledge that the cocaine or heroin had been

imported contrary to law. As stated in Hernandez v. United States, supra, 300 F.2d at pages 121–122:

"A construction of Section 174 which would permit a presumption of defendant's guilt to be based not only upon his own actual or constructive possession but also upon the possession of a co-conspirator, would involve no small extension of the statute's coverage. Under the general law of conspiracy, the common course of conduct between defendant and the third person need not be based upon express agreement—tacit understanding is enough. Neither the existence of the common scheme nor the fact of defendant's participation in it need be proved by direct evidence; both may be inferred from a 'development and collocation of circumstances.' Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, [86 L.Ed. 680] (1942). Once the existence of the common scheme is established, very little is required to show that defendant became a party—'slight evidence may be sufficient to connect a defendant with it.' Nye & Nissen v. United States, 168 F.2d 846, 852 (9th Cir. 1948), affirmed 336 U.S. 613, 69 S. Ct. 766, 93 L.Ed. 919. Once it is found that the defendant was connected with the conspiracy, he is equally liable with those who originated and dominated the common scheme, though he joined it after its inception and his part was minor and subordinate. He is responsible not only for the acts of the conspirators in furtherance of the conspiracy following his joinder, but also for those that precede it. Moreover, he is liable for the acts of his co-conspirators though he was not aware of the performance of those acts, nor even of the existence of the actors.

"In the light of these general principles of conspiracy law, a construction basing the statutory presumption upon the possession of a co-conspirator would sweep within the presumption situations in which the rational connection between defendant's 'possession' and the probability that defendant had knowledge of the source of the drugs, would be remote, and the burden of explanation imposed upon the defendant would be difficult if not impossible to discharge. Thus 'possession' within Section 174 would include possession of which defendant had no knowledge and over which he had no control, by third persons of whose existence defendant was unaware and who (as in the present case) were not present at trial to testify to the possibly legitimate source of the narcotic drugs, perhaps known only to them.

"Engrafting the doctrines of vicarious liability taken from the general law of conspiracy upon the presumption of guilt in this highly penal statute would extend the statutory presumption over so wide and uncertain an area of conduct, and with such severe consequences to the actors, that it is a step not to be taken by a court without clear congressional direction." (Footnotes omitted.)

The government tacitly concedes in its brief that the above quoted instruction was erroneous but contends that the appellant was not prejudiced thereby because of the existence in the record of testimony showing that the appellant had control over the narcotics in question. Such statement, if true, is no answer to the highly prejudicial instruction which we have quoted since it is impossible to determine whether the jury based its implied finding that the appellant had knowledge that the narcotics in question were imported contrary to law on the statutory rule of evidence arising from his control of the narcotics, or upon imputed knowledge arising from knowledge of one of the other conspirators.

We note, *sua sponte*, that the error in the giving of the instruction was com-

pounded by the government's prosecutor when, in his argument to the jury, he stated:

"Now, another point to bear in mind is, and I believe you will be instructed on it, is that the acts and declarations of one conspirator are imputed to all the other members of the conspiracy. That is important for this reason, ladies and gentlemen: If you find that any one of these—that a conspiracy existed, that any one of these people had heroin or cocaine in their possession during the course of that conspiracy, then he is presumed to have knowledge of its being unlawfully imported and, therefore, all other members of the conspiracy, even though there is no evidence of their having had narcotics in their possession."

■ Since the judgment of conviction must be reversed because of prejudicial error in the giving of the instruction, we deem it unnecessary to pass upon the remaining specifications of error except appellant's contention that Title 21 U.S.C. § 174 is unconstitutional. There is no merit in such contention. The constitutionality of the rule of evidence created under the language contained in the second paragraph of Section 174, and similar provisions contained in 21 U.S.C. § 176a, relating to marijuana, have been expressly or impliedly sustained in many cases involving opium, heroin and marijuana. See cases cited in Hernandez v. United States, supra.

The judgment of conviction is reversed and the cause remanded to the District Court with instructions to grant appellant a new trial. In the event of a new trial, consideration should be given by the District Court to appellant's contention that he had twice been put in jeopardy for the same offense. The government contends on this appeal that the plea of double jeopardy was waived by the appellant when he failed to put such plea in issue at the trial. The claim of waiver should be viewed in the light of the admittedly typographical errors appearing in the indictment and the judg-

ment of conviction as to the date of the termination of the conspiracy, and which errors were adverted to in the earlier part of this opinion.