**UNITED STATES of America,
Appellee,**

v.

**Albert PUCO, Appellant.**

**No. 123, Docket 34960.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1970.

Decided Jan. 8, 1971.

Jay Goldberg, New York City, for appellant.

David Wallenstein, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, Ross Sandler, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of conviction, following a jury trial in the United States District Court for the Southern District of New York before Judge Pollack, on a two-count indictment. The first count charged the sale of a quantity of cocaine in violation of 26 U.S.C. §§ 4705(a) and 7237(b), and the second count alleged a conspiracy to sell and receive illegally imported drugs under 21 U.S.C. §§ 173, 174. At the trial there were two defendants, Albert Puco, sole appellant here, and Roberto Gonzalez, and both were convicted on both counts. We find error on Puco's appeal and reverse and remand for new trial.

On June 25, 1969 undercover narcotics agents and an informer, later identified as Al Martin, met with Gonzalez to arrange for the purchase of a large quantity of heroin. Gonzalez attempted to reach his "contact" or supplier but was unable to do so. Gonzalez identified his

Uniform Act, Calif.Penal Code § 11177(3).
See Seward v. Heinze, 262 F.2d 42 (9th Cir. 1958).

contact as a person by the name of "Al." There followed a series of meetings between the agents and Gonzalez where various terms of the sale were discussed, but the parties were never able to reach agreement, and Gonzalez reported that "Al" was "feeling heat" (i. e., sensed the presence of enforcement agents) and would not go through with the transaction. During these meetings on two occasions Agent Scrocca spoke with "Al" on the telephone.

After the heroin deal fell through, Agent Ellin approached Gonzalez asking if he could purchase some cocaine. Gonzalez told Ellin that he could get a quantity of cocaine at an excellent price from the same contact. Gonzalez stated that he could supply the highest quality Bolivian cocaine available rather than the Peruvian type which was more common on the street. Arrangements were made for Ellin to drive Gonzalez to an address on White Plains Road on the evening of July 2, 1969. The two men parked the car and waited until a man identified later as appellant Albert Puco came out of a TV repair shop. Ellin testified that Gonzalez said "There is my man now. He has the stuff in a brown bag." Puco walked directly into an adjoining apartment building. Gonzalez got out of the car and entered the same building, returning after 30 seconds with a bag containing one-half kilogram of cocaine. Surveilling agents then moved in and arrested Gonzalez. Puco at the same time walked out of the apartment building and rapidly up the street where he was arrested by one of the agents.

Both Gonzalez and Puco testified at the trial. Gonzalez admitted the dealings with the agents and the events on White Plains Road, but he denied that he knew Puco or that Puco had any part in the operation. Puco likewise denied that he knew Gonzalez or had any part in the transaction. He maintained that he had closed his TV shop and was walking to his car when he was approached by an agent, asked for his identification, and then told he was under arrest. He denied entering the apartment building.

Appellant contends that a post-arrest, out-of-court statement made by Gonzalez to Assistant United States Attorney Johnson implicating Puco was improperly placed before the jury. At the trial Mr. Johnson asked Gonzalez a series of questions about this statement; each question was stated as "Did you tell me" or "Do you recall me asking you * * *." Gonzalez agreed to much of what was so asked but denied each of several such assertions involving Puco, to which objection was made. We find this contention of appellant that prejudicial error was injected here well taken. Using this statement, which was never admitted into evidence against either defendant, in this way in effect placed the credibility of the prosecutor himself before the jury and was therefore highly prejudicial. The prosecutor by his reading from the purported statements and the form of his questions was plainly representing that Gonzalez had in fact made the statements to him. This practice has been widely condemned as this court noted in a factual situation very similar to the present case. United States v. Block, 88 F.2d 618, 620 (2d Cir. 1937):

> The judge's charge to the jury mended nothing; he left the jury to disentangle in their minds the innocuous part which the witness had conceded from the great bulk which he had disaffirmed * * * the natural conclusion was not only that defendants (were guilty of the crimes charged) but that they had suborned the witness to deny it.

[See also, Greenberg v. United States, 280 F.2d 472, 474–475 (1 Cir. 1960); Dunn v. United States, 307 F.2d 883, 885 (5 Cir. 1962).]

Another point raised by appellant involves the conspiracy count charging violation of 21 U.S.C. §§ 173, 174 (the narcotics importation statute). Puco contends that there was insufficient evidence to charge him with the knowledge that the drug was imported as required by section 174. In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.

Ed.2d 610 (1969), the Supreme Court found the provisions which allowed a conclusive presumption of the required knowledge of importation to be made from mere possession were unconstitutional since, unlike heroin, there is a substantial amount of cocaine actually produced in this country. The government was therefore required to present either direct or circumstantial evidence showing Puco had such knowledge. Moreover, as this court held in an opinion by Judge Hays in United States v. Massiah, 307 F.2d 62, 69 (2d Cir. 1962), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, the government must prove that the drugs were imported to the knowledge of each defendant and such knowledge by one defendant of illegal importation may not be imputed to the other defendants. [See, e. g., Hernandez v. United States, 300 F.2d 114 (9 Cir. 1962); Jefferson v. United States, 340 F.2d 193 (9 Cir. 1965), cert. denied, 381 U.S. 928, 85 S. Ct. 1567, 14 L.Ed.2d 686; and United States v. Agueci, 310 F.2d 817 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11.] The government argues that since it did present testimony showing that Gonzalez had told his prospective customer that the cocaine came from Bolivia and since it had presented circumstantial evidence that Puco was Gonzalez's supplier (i. e., the statement made by Gonzalez pointing out Puco on the street; the identification of Puco's voice by Agent Scrocca; and the fact that Puco was said to have entered the apartment building shortly before Gonzalez emerged with the cocaine) the jury could then further infer that the only way that Gonzalez could have known that the cocaine originated in Bolivia would be if he had been told this by Puco. We doubt that this is sufficient evidence to support a finding of knowledge of importation on the part of Puco, but in view of our ruling on the first point we find it unnecessary to determine the sufficiency of this proof.

Since we find prejudicial error in the manner in which the prosecutor placed his own credibility in the balance against that of the witness, we do not reach the further contention that the use of the statement involved a violation of the *Bruton* doctrine.[1] We find no ground for reversal in appellant's other claims of error.

Reversed and remanded for new trial.

MOORE, Circuit Judge (dissenting):

The majority opinion for reversal rests upon a theory that the prosecutor improperly placed his own credibility before the jury. I can come to no such conclusion upon the facts. Gonzalez,

1. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Compare, United States v. Ballentine, 410 F.2d 375 (2d Cir. 1969), cert. denied, 397 U.S. 928, 90 S.Ct. 935, 25 L.Ed.2d 107, where we held the *Bruton* requirements satisfied so long as the witness was called by appellant as his own witness and took the stand, with O'Neil v. Nelson, 422 F.2d 319, 321 (9 Cir. 1970) where the court, relying on *Bruton* and Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) stated:

> It is true that in O'Neil's case Runnels did take the stand and was thus available for cross-examination. But he did not "affirm the statement as his"; he flatly denied making it. Under these circumstances, while the statement was admissible against Runnels, both as an admission or confession and

for impeachment, it never became admissible against O'Neil. Yet it remained in the record, and Bruton tells us that the court's instruction to the jury is, as a matter of law, ineffective.

> The damage done by the out of court statement was just what it would have been had Runnels refused to take the stand at all.

California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970) relied on by the United States, is distinguishable since there the witness conceded making the statements and was available for full cross-examination at trial as to the discrepancies in his two versions of the events; and in *Green* the prior statement had been made at a preliminary hearing at which defendant's trial counsel was present and conducted cross-examination.

Puco's co-defendant, had taken the stand in his own defense as had Puco. Upon cross-examination of Gonzalez, the prosecutor prefaced a series of questions with the words "Do you recall telling me that * * *" or "Do you recall me asking you * * *" followed by a statement which Gonzalez impliedly had made to the prosecutor in his office. It was Gonzalez, not the prosecutor, who was testifying. To some of the questions Gonzalez gave an affirmative answer, to many a negative such as "I didn't say that" or "I didn't say that to you." Concededly, a less personal approach in the formulation of the questions would have been preferable although this form is frequently used under similar situations. Gonzalez had every opportunity to deny that he had made the imputed statements and did not hesitate to do so. At stake was Gonzalez' credibility—not the prosecutor's. But even assuming error in these few questions in the course of the trial, unless the principles of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) are to be disregarded, this error would certainly fall into a "harmless" category. The many far more direct statements or misstatements of lawyers, witnesses and even the learned Court itself are erased from the jurors' minds by that now-standardized segment of every charge usually advising the jury in substance that "you are to ignore completely etc." The trial court here gave these instructions. As long as the jury system is to prevail, the jury is presumed to follow the court's instructions. Only in the event of a *Bruton*[1] situation involving inability to confront has this presumption been dishonored.

As to knowledge of importation, appellant correctly states the principle prohibiting imputation of knowledge to a co-conspirator without more but here there was more from which the jury could have inferred knowledge of the Bolivian source.

I agree with the majority as to the other claims of error.

Finding no error in the judgment, I would affirm.

---

1. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).