RENDERED: MARCH 25, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0738-MR

RICK AARON FISHER                                             APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KELLY MARK EASTON, JUDGE
V.                               NO. 18-CR-00576

COMMONWEALTH OF KENTUCKY                      APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

Rick Aaron Fisher and his co-defendant, Lisa Harvey, tried jointly, were convicted by a circuit court jury of complicity to murder and tampering with physical evidence. Fisher was sentenced to thirty years' imprisonment consistent with the jury's recommendation, and he now appeals the resulting judgment as a matter of right.[1] We affirm the judgment.

The central issue we address is whether the trial court erred in violation of Fisher's Confrontation Clause rights by admitting incriminating hearsay offered against Fisher consisting of unredacted out-of-court statements in which co-defendant Harvey incriminated herself and Fisher to a cellmate who testified at trial. The trial court ruled the Confrontation Clause was not implicated because Harvey's out-of-court statements to her cellmate were not

---

[1] Ky. Const. § 110(2)(b).

testimonial under *Crawford v. Washington* and sufficient corroboration otherwise supported admissibility of the out-of-court statements under a hearsay exception. We find no error in the trial court's ruling on this issue.

On a second issue, we find no error in the trial court's admitting a jail phone call of Fisher's. Finally, we find harmless error in the Commonwealth's Attorney's improperly injecting her own testimony into the trial during questioning.

## I. FACTUAL BACKGROUND

Investigators found Andrew Folena's decomposing body beaten and buried in the wooded area bordering a cornfield not far behind his house. Folena had returned home to find that his fiancée, Lisa Harvey, and two men, Fisher and Joe Goodman, had been staying in his house while he was away. Harvey had ongoing sexual relations with Fisher and Goodman, and the three apparently used methamphetamines together in Folena's house while he was away.

Goodman testified at Fisher and Harvey's joint trial that earlier on the day of the murder, Fisher and Harvey stated they would kill Folena, although Goodman did not take them seriously. Goodman testified that later that night he heard from the basement what must have been Folena trying to come through the front door of the house. Unable to get into the house that way, Folena walked around to the back of the house. After hiding in the basement for a moment, Goodman heard a commotion and looked outside to the backyard to see Fisher bludgeoning Folena with a baseball bat and Harvey

2

positioned on top of Folena strangling him.  Goodman quickly packed his things, called his ex-girlfriend to tell her to alert the police, and ran out into the cornfield.  Goodman stayed there for, in his estimate, about twenty minutes, unsure of what to do.  Before long Fisher found Goodman and sent him back to the house.  Several days later, Goodman's ex-girlfriend finally called law enforcement officers, who performed a welfare check at the Folena residence. Fisher, Harvey, and Goodman were there when the officers arrived.

During a search, the officers found a bloody baseball bat, a metal hook tool, and work gloves.  Outside, they found a fresh trail leading to the back of the property where they found a wheelbarrow, bleach bottles, a shovel, tarps, and recently disturbed earth.  A cadaver-dog found Folena's body in the disturbed earth.  A medical examiner determined the cause of death was a combination of blunt-force trauma and strangulation. Fisher and Harvey were charged with Folena's murder.  While Goodman's DNA was found on several items of interest in the house and near the crime scene, he was not charged.

## II. STANDARD OF REVIEW

Fisher has preserved all the issues he now raises on appeal.  Preserved claims of error are subject to our normal standard of review.[2]  Under this standard, we first determine if there is an error, and if we find error, we then

---

[2] *Ordway v. Commonwealth*, 391 S.W.3d 762, 774 (Ky. 2013).

3

determine whether it negatively affected the substantial rights of the parties.[3]

If the error had no such effect, we will regard it as harmless and affirm.[4] If

such an error has constitutional implications, we will affirm only if the error

was harmless beyond a reasonable doubt.[5]

### III.  ANALYSIS

**A. Admitting Harvey's out-of-court statements against Fisher did not violate the Confrontation Clause or the Rule Against Hearsay.**

Neither of the defendants testified at their joint trial, but three of their

former cell-mates did.  If all three cell-mates are believed, Fisher and Harvey

independently confessed to their cell-mates their own participation in the

murder.  Harvey's cell-mate, Tonya Dean, testified that on an occasion when

she and Harvey were together in their cell, Harvey described Folena's murder,

stating that two men beat Folena while or before she, Harvey, strangled him.

Fisher's cell-mates testified that Fisher told them essentially the same thing,

except that Fisher's account did not involve another man.[6]

Fisher claims the trial court erred in admitting Harvey's hearsay

statement without redaction in violation of the Confrontation Clause of the

Sixth Amendment of the United States Constitution.  During conference at trial

---

[3] *Brafman v. Commonwealth*, 612 S.W.3d 850, 857 (Ky. 2020) (citing *Allen v. Commonwealth*, 395 S.W.3d 451, 467 (Ky. 2013)). *See* Rules of Criminal Procedure (RCr) 9.24.

[4] *See* RCr 9.24.

[5] *Nunn v. Commonwealth*, 461 S.W.3d 741, 750 (Ky. 2015) (citing *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 n.1 (Ky. 2009)). S*ee Crossland v. Commonwealth*, 291 S.W.3d 223, 231 (Ky. 2009).

[6] This discrepancy as to the number of men involved is never truly explained.

4

and in a thorough post-trial order, the trial court carefully analyzed this issue, ultimately concluding that admitting Harvey's statement against Fisher did not violate Fisher's Confrontation right. We find it worthwhile now to clarify the standards for admitting hearsay against a criminal defendant under the Confrontation Clause.

### 1. *The Confrontation Clause applies only to testimonial hearsay statements.*

As it pertains to hearsay that incriminates an accused in a criminal trial, the right of the accused under the Sixth Amendment to confront the witness against him applies only to bar those statements that can be considered "testimony" against the accused. This approach to the Confrontation right was handed down in the landmark case *Crawford v. Washington*.[7] *Crawford* shifted the constitutional focus from the statement's apparent reliability to an emphasis on the context in and purpose for which the statement was originally made.[8] *Crawford* has since assumed an important role in Confrontation Clause precedent, a body of authority that includes cases like *Bruton* and *Richardson*, discussed below.[9]

In *Crawford*, the Supreme Court of the United States held that, independently and separately from the rules of evidence,[10] "the Confrontation

---

[7] *Crawford v. Washington*, 541 U.S. 36 (2004).

[8] *See id.* at 68–69.

[9] *Rodgers v. Commonwealth*, 285 S.W.3d 740, 746 (Ky. 2009).

[10] *Crawford*, at 51, 62 (2004) ("This [previous] focus [on the law of Evidence] also suggests that not all hearsay implicates the Sixth Amendment's core concerns. An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the

Clause forbids admission of all *testimonial* hearsay statements against a defendant at a criminal trial unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination."[11] The central focus of *Crawford* was the key term *testimonial* as it pertains to hearsay statements offered against a criminal defendant.[12] The Court elaborated on what this term meant: "The text of the Confrontation Clause . . . applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'"[13] It has since become clear that whether a statement is testimonial is a declarant-centric inquiry.[14]

Under *Bruton v. United States*,[15] a trial court may not admit a non-testifying co-defendant's *testimonial* out-of-court statement as evidence against the accused in their joint trial.[16] "In the context of a joint trial, therefore, 'the pretrial confession of one [defendant] cannot be admitted against the other unless the confessing defendant takes the stand.'"[17] *Bruton* simply extends to

---

civil-law abuses the Confrontation Clause targeted. On the other hand, ex parte examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.").

[11] *Bray v. Commonwealth*, 177 S.W.3d 741, 744 (Ky. 2005), overruled on other grounds by *Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010) (citing *Crawford*, at 68) (emphasis added).

[12] *See id.*

[13] *Id.* at 745 (quoting *Crawford*, at 51).

[14] *See United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009).

[15] 391 U.S. 123 (1968).

[16] *See id.* at 125–26.

[17] *Rodgers*, at 745–46.

joint trials *Crawford*'s prohibition against out-of-court *testimony,* protecting the accused in a joint trial from the incrimination of his non-testifying co-defendants' hearsay statements.[18]

*Richardson v. Marsh*[19] further complements *Bruton* in another analytical layer, in that same specific circumstance of the joint trial.[20] *Richardson* held that redaction of a statement to omit reference to the accused may suffice for purposes of *Bruton* and, therefore, the protections of the Confrontation Clause.[21]

Before proceeding, the doctrinal connection among *Crawford, Bruton,* and *Richardson* bears discussion because each plays a relevant part in Confrontation Clause precedent pertaining to hearsay. As stated above, the Confrontation Clause addresses out-of-court statements, utterances, and assertions against the accused that are testimonial,[22] a concept derived from *Crawford* and its progeny. "*Crawford*'s progeny" includes

---

[18] Although *Bruton* preceded *Crawford* by over thirty years, the two cases do not establish independent "lines," or branches, of Confrontation Clause precedent. Rather, *Bruton* now extends *Crawford*'s principles to the joint trial scenario. *Bruton* has always effectively concerned the specific *situation* in which a statement is offered, while *Crawford* addresses the *type* or *nature* of the statement itself.

[19] 481 U.S. 200 (1987); *Rodgers*, at 746.

[20] *See Richardson*, at 207–08; *Commonwealth v. Stone*, 291 S.W.3d 696, 700 (Ky. 2009).

[21] *See Rodgers*, at 746 (citing *Gray v. Maryland*, 523 U.S. 185 (1998)).

[22] *See Johnson*, 581 F.3d at 325–26 ("[T]he Supreme Court answered this question and explained that the Confrontation Clause *has no bearing* on *nontestimonial* out-of-court statements.") (citing *Davis v. Washington*, 547 U.S. 813, 825 (2006) and *Whorton v. Bockting*, 549 U.S. 406, 420 (2007)).

*See also Miller v. Commonwealth*, 2008 WL 466138 at *13 (Ky. Feb. 21, 2008) ("Under *Davis*, however, the Confrontation Clause is not implicated by *nontestimonial* hearsay statements, the admissibility of which is governed solely by the rules of

*Davis v. Washington*,[23] *Michigan v. Bryant*,[24] and persuasive Sixth Circuit authority based on *Crawford*. The role of *Crawford* and its progeny primarily has been to elaborate on what constitutes *testimony* for purposes of the Confrontation Clause.[25] *Bruton* merely extends that same *Crawford*-oriented protection against *testimonial* hearsay to the accused in a joint trial. And finally, *Richardson*, specifically invoked by Fisher, applies to the very same hearsay statements to which *Bruton* would apply.[26] So if a co-defendant's out-of-court statement is not testimonial, *Crawford, Bruton,* or *Richardson,* do not bar potentially admissible statements.[27]

---

evidence.") (emphasis added) (citing *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007)); Leslie W. Abramson, 9 Ky. Prac. Crim. Prac. & Proc. § 15:39, n. 1 (hereafter "Abramson") ("For a statement to be considered under *Bruton*, the statement must be testimonial under *Crawford*.") (citing *Johnson, supra*), § 27:232 ("[Under the Sixth Amendment], a *nontestimonial* out-of-court statement may be admissible at trial regardless of either the declarant's availability to testify at trial or any prior opportunity to cross-examine the declarant.") (emphasis added).

[23] 547 U.S. 813 (2006).

[24] 562 U.S. 344 (2011).

[25] *See Stone*, 291 S.W.3d at 699–700; Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 8.00[2][a] (LexisNexis Matthew Bender) (2020) (hereafter "Lawson") ("The [*Crawford*] Court narrowed the reach of the Clause by limiting its application to 'testimonial statements' . . . .").

[26] The *Richardson* Court stated that it was addressing *Bruton* joint-trial situations, a notably specific circumstance: "In *Bruton*, however, we recognized a narrow exception to this principle: We held that a defendant is deprived of his Sixth Amendment right of confrontation when *the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial*, even if the jury is instructed to consider the confession only against the codefendant." *Richardson*, at 207 (emphasis added).

[27] *See Johnson*, at 325–26; Abramson, § 15.39, n. 1.

8

Our jurisprudence has been confused in this area. At least one unpublished case out of this Court, *Miller v. Commonwealth*,[28] cited by the trial court in its order, has held clearly and correctly that "the Confrontation Clause is not implicated by *nontestimonial* hearsay statements, the admissibility of which is governed solely by the rules of evidence."[29] This conclusion finds support in authoritative caselaw from the Sixth Circuit, stating effectively the same thing, cases like *Johnson v. United States*[30] and *United States v. Arnold*.[31] But two recent cases from this Court, *Maiden v. Commonwealth*[32] and *Hatfield v. Commonwealth*,[33] both unpublished companion cases, appear at odds with *Miller* and the weight of authority. These cases suggest there may be a remaining *Bruton-Richardson* issue to resolve even if the statement is veritably nontestimonial.[34] To the contrary, the weight of authority cited above and below holds that *Bruton-Richardson* issues are present only where the hearsay statement in question is testimonial per *Crawford* and, as a corollary, not where the statement is nontestimonial.

---

[28] 2008 WL 466138 (Ky. Feb. 21, 2008).

[29] *Id.* at *13.

[30] 581 F.3d 320, 325–26.

[31] 486 F.3d 177, 192–93.

[32] 2017 WL 1538277 (Ky. Apr. 27, 2017).

[33] 2017 WL 1538507 (Ky. Apr. 27, 2017).

[34] *Maiden,* at *5 and *Hatflield,* at *3.

## 2. *Harvey's out-of-court statements were not testimonial, so they were not rendered inadmissible under the Confrontation Clause.*

In the present case, Harvey made voluntary, unprompted out-of-court statements to her cellmate, Dean. Those statements were later offered at trial as evidence against Fisher, but Harvey did not testify at trial and was at no point subject to Fisher's cross-examination. Harvey's statements incriminated herself and arguably Fisher by implication.[35] For the sake of thoroughness and fairness to Fisher, we will assume Harvey's statement, as retold by Dean, effectively asserts Fisher was one of those two men for purposes of *Bruton-Richardson*. Again, though, only if these statements were testimonial under *Crawford* was the trial court obligated to exclude the statements under *Bruton* or redact them under *Richardson*.[36]

The *Crawford* conception of *testimony* is instructive. The classic, archetypal circumstance that concerns us here is that which was seen in England during the political trials of the 16th and 17th centuries.[37] At the time, it was not uncommon for the English prosecutor to offer a purported witness's statement against the accused, a statement uttered somewhere beyond the walls of the courtroom, often ex parte.[38] Of course, these witnesses would at times be unavailable for cross-examination at trial, leaving both the

---

[35] Dean said only that Harvey referred to "two other gentlemen" involved in the beating.

[36] *See Bray*, at 745; Lawson, at § 8.00[2][a].

[37] *See Crawford*, at 44.

[38] *See id.*

10

party offering the statement and the purported declarant completely

unaccountable for the substance or basis of his accusation. Still the English

court might not honor the common-law tradition of bringing the accusing

witness to face the accused in court,[39] admitting the statement for

consideration without adversarial examination by the accused.[40] Perhaps the

most famous instance of this practice was the admission of Lord Cobham's ex

parte accusation of treason against Sir Walter Raleigh.[41] The *Crawford* Court

recognized this evil, plain in historical context, as among several abusive

prosecutorial practices the Framers intended the Confrontation Clause to

remedy.[42]

These concerns continue to guide our application today. What

constitutes a testimonial statement is an objective circumstantial inquiry

viewed from the declarant's perspective, a decidedly declarant-centric inquiry.[43]

The United States Supreme Court clarified in *Davis* that "it is in the final

analysis the declarant's statements, not the interrogator's questions, that the

---

[39] *See id.* (citing 3 W. Blackstone, Commentaries on the Laws of England 373–374 (1768)).

[40] *Id.*

[41] *See id*, at 44–45 (citing Raleigh's Case, 2 How. St. Tr. 1, 15–16) ("[Expecting Cobham might recant his accusation,] Raleigh demanded that the judges call [Cobham] to appear, arguing that '[t]he Proof of the Common Law is by witness and jury: let Cobham be here, let him speak it. Call my accuser before my face. . . .' The judges refused,[] and, despite Raleigh's protestations that he was being tried 'by the Spanish Inquisition,'[] the jury convicted, and Raleigh was sentenced to death.'").

[42] *See id*, at 50–52.

[43] *Johnson*, 581 F.3d at 325 ("In determining whether statements are testimonial, we ask whether the *declarant* intended to bear testimony against the accused.") (citing *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)) (internal quotations omitted, and emphasis added).

11

Confrontation Clause requires us to evaluate."[44]  Circumstances tending to indicate a statement is testimonial include when the statement describes a past event, as opposed to an immediate, ongoing event like an emergency;[45] the apparent, primary purpose of the interrogation or conversation is to use the statements obtained as evidence in a prospective criminal prosecution;[46] and particularly where the interrogation, if the exchange can be characterized that way, is formally arranged or conducted,[47] especially by an officer or agent of the state intending to elicit statements as evidence.[48]

---

[44] *Rankins v. Commonwealth*, 237 S.W.3d 128, 131 (Ky. 2007) (citing *Davis*, at 822, n. 1).

[45] *Id.*

[46] *Crawford*, at 51 ("Various formulations of 'testimonial' statements exist: 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial interrogations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements *that declarants would reasonably expect to be use prosecutorially . . . .*") (emphasis added).

[47] *See Crawford*, at 68 ("Whatever else the term ['testimonial'] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial.").

[48] *Crawford*, at 52, 68 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.  Police interrogations bear a striking resemblance to examinations by justices of the peace in England . . . . [T]he term ['testimonial'] applies to . . . police interrogations".).

A distinction worth mentioning on this point:  Statements obtained through routine interrogations by police are usually testimonial but should not be conflated with statements obtained through a confidential informant, even an informant working closely with police.  Again, that police are involved at all is a factor for consideration, but the focus is whether a person in the declarant's position would have *objectively* figured whom he was speaking to and for what purpose.  Incriminating statements to an undercover informant are still generally not testimonial, even where police are involved closely, at least where a reasonable person in the declarant's position would have been unaware of the informant's role in an investigation. *E.g., Johnson*, at 325 ("Because [the declarant] did not know that his statements were being recorded and because it is clear that he did not anticipate them being used in a criminal proceeding against Johnson, they are not testimonial, and the Confrontation Clause does not apply.").  *See United States v. Dale*, 614 F.3d 942, 956 (8th Cir. 2010) (citing wider adoption in federal sister circuits in *United States v.*

Again, before proceeding, we must address and overrule the unpublished Kentucky authority inconsistent with the above declarant-centric approach. In particular, *Maiden* and *Hatfield*, cited above, which suggest that even if a statement is not testimonial from the declarant's perspective, such statements may somehow become testimonial "in every relevant respect" when the nontestimonial statement is later repeated in the testimony of the receiving witness at trial.[49] Whether a statement is testimonial depends solely on the circumstances of the declarant himself at the time he made the statement, not whether a person who heard the statement eventually repeats under solemn oath what she allegedly heard the declarant say.

Harvey's statements in the present case were not testimonial under *Crawford*. Harvey's statements to Dean were an account of past events, which may tend to indicate the statement was testimonial.[50] But Harvey's statements were not originally made to or at the behest of an officer's interrogation. That the state did not prompt or elicit the statement, although not dispositive, strongly indicates Harvey was not bearing testimony. Harvey apparently made the incriminating statement in what objectively seemed to be a private conversation. And the trial court was correct when it concluded that, as a general matter, conversations between cell-mates will not be testimonial under

---

*Udeozor*, 515 F.3d 260, 269–70 (4th Cir. 2008); *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008); *United States v. Underwood*, 446 F.3d 1340, 1347–48 (11th Cir. 2006); *United States v. Hendricks*, 395 F.3d 173, 182–84 (3d Cir. 2005); *United States v. Saget*, 377 F.3d 223, 229–30 (2d Cir. 2004)).

[49] *Maiden*, at *5 and *Hatfield*, at *3.

[50] *See Davis*, at 822; *Rankins*, at 131.

13

the Confrontation Clause.  Consistent with federal authority, jailhouse conversations between cell-mates are not typically attended by the above-listed circumstances that indicate a statement is testimonial.[51]

Since Harvey's statements were not testimonial, the statements did not implicate the Confrontation Clause under *Crawford* or *Bruton*.[52]  Absent a true *Bruton* issue, the trial court was not required to exclude or redact Harvey's statements under *Richardson* as Fisher claims.  The trial court correctly ruled the admission did not violate the Confrontation Clause.

### 3. *Harvey's out-of-court statement is otherwise admissible under Kentucky Rule of Evidence (KRE) 804(b)(3) as a statement against penal interest.*

Having resolved the constitutional issue, we turn to the remaining evidentiary hearsay issue.  As with the Confrontation Clause issue, the trial court's order and disposition on the hearsay issue followed astute reasoning.[53]  We accept and start with the circuit court's first premise that Harvey's statement implicated her in Folena's murder, rendering it admissible as an admission of a party per KRE 801(b)(1).  Then, to the extent the statement also asserts Harvey was *complicit* in the murder with Fisher under KRS 502.020, it

---

[51] *E.g., Davis*, 547 U.S. at 825 (citing *Dutton v. Evans*, 400 U.S. 74, 87–89 (1970) (plurality), as a case involving "clearly nontestimonial" "statements from one prisoner to another"). *See also Johnson*, 581 F.3d 320 (6th Cir. 2009); *United States v. Pelletier*, 666 F.3d 1 (1st Cir. 2011).

[52] *See Johnson*, at 326 (citing *Davis*, 547 U.S. at 825; *Whorton v. Bockting*, 549 U.S. 406, 420 (2007)).

[53] We note that Fisher raises only the Constitutional issue under the Confrontation Clause and does not seriously dispute the admissibility of the hearsay statement under the following exceptions.

14

is also admissible as a statement against penal interest under KRE 804(b)(3). This latter conclusion is more closely connected with the nature of the Commonwealth's specific theory—that of complicity—because evidence of Fisher's involvement was necessarily proof of Harvey's complicity.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.[54]  Sitting in their jail cell, Harvey asserted to Dean that two men beat Folena, contributing to his death.  The Commonwealth sought to offer these statements, not just as evidence against Harvey, but also to prove Fisher was one of the men with whom Harvey admitted she was complicit.  So to the extent Harvey's statement is an assertion that Harvey and Fisher were complicit with one another, the statement is hearsay.

Hearsay is inadmissible unless it is excepted under the Kentucky Rules of Evidence.[55]  The rules contain an exception for statements made against the declarant's interest under KRE 804(b)(3).  The exception applies where the declarant is unavailable to testify at trial and, where the statement exposes the declarant to criminal liability, sufficient corroboration of the statement clearly indicates its trustworthiness.[56]  The declarant may be unavailable to testify for purposes of KRE 804(b)(3) when she invokes her Fifth Amendment right to remain silent and avoid self-incrimination.[57]

---

[54] KRE 801.

[55] KRE 802.

[56] KRE 804(b)(3).

[57] KRE 804(a)(1).

15

It was clearly against Harvey's penal interest to admit her own involvement in Folena's murder, i.e., it was directly against her penal interest to admit complicity. And Harvey was unavailable to testify at trial, having invoked her right to avoid self-incrimination. The trial court found correctly within its discretion that the statements were corroborated by Goodman's testimony and by the totality of forensic and other circumstantial evidence. Particularly corroborating was the fundamental consistency between Fisher's and Harvey's independent accounts to their respective cell-mates. Harvey's statement fell within the exception of KRE 804(b)(3). This was not error for the trial court to admit Harvey's unredacted statements as evidence against Fisher.

**B. Appellant's phone call from jail was not inadmissible hearsay.**

We review the admission of this evidence for abuse of discretion.[58] A trial court abuses its discretion when its decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[59]

The trial court admitted a jail phone call between Fisher and an unidentified woman. In the call, the woman tells Fisher that "Jayden" "didn't see nothing" but "he heard it out of the horse's mouth." Following the phone call, Detective Priddy went to Jayden Grissom, who was Fisher's former cell-mate and later a witness for the Commonwealth. The Commonwealth argued the recording was offered to show why Priddy sought out Grissom. The trial court determined the phone call contained hearsay, even before hearing it, but

---

[58] *Parton v. Commonwealth,* 918 S.W.2d 219, 222 (Ky. 1996).

[59] *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

16

allowed the Commonwealth to play the recording under the trial court's admonition to the jury that it was to be used only to show why Detective Priddy went to Grissom as part of her investigation.

The review here is brief because contrary to Fisher's claim on appeal, this phone call did not contain hearsay. While the call contained statements or, more aptly, allusions to statements of "Jayden's" made out-of-court, the woman relayed no relevant assertion of fact, much less any that implicated Fisher.[60] Perhaps if the woman had elaborated on what Jayden had purportedly heard "out of the horse's mouth," maybe there would be a hearsay issue. But having found these statements were not hearsay and satisfied that they were admitted for the valid purpose of showing Detective Priddy's course of investigation, the trial court did not err in admitting the phone call.

## C. The Commonwealth's Attorney's questioning techniques were improper but do not warrant reversal.

Fisher claims the Commonwealth's Attorney used improper questioning techniques at trial while questioning Detective Priddy, allowing the prosecutor to testify vicariously through this witness. Fisher bases his claim on Kentucky

---

[60] *See* KRE 801(c) ("'Hearsay' is a statement, [made out-of-court], offered to prove the matter *asserted*.") (emphasis added); *Harris v. Commonwealth*, 384 S.W.3d 117, 125–26 (Ky. 2012) ("[A]n 'assertion' is a statement or expression of a fact, condition or opinion.").

Rules of Professional Conduct (SCR) 3.130-3.4(e)[61] and -3.7,[62] both rules against counsel offering testimony at trial, and KRE 603[63] and KRE 802.[64] Fisher argues the prosecutor's questioning ultimately constituted prosecutorial misconduct warranting reversal. Because errors of this sort implicate constitutional rights, if it was indeed error, we may only affirm if we conclude this alleged error was harmless beyond a reasonable doubt.[65]

For context, the defense had just cast doubt on whether Fisher's former cell-mate, Jayden Grissom, had learned the details of the crime from Fisher himself, i.e., "out of the horse's mouth," or if he had learned this by perusing Fisher's discovery materials while Fisher was away from the cell. The Commonwealth's Attorney set out to prove that Grissom learned the details of the crime directly from Fisher himself. And she meant to do this by having Detective Priddy testify about the Commonwealth's Attorney's discovery log, a document showing the discovery production timeline. She hoped to prove that Grissom could not have had access to that information through Fisher's

---

[61] "A lawyer shall not . . . assert personal knowledge of facts in issue except when testifying as a witness or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused."

[62] In general, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. . . ."

[63] "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."

[64] "Hearsay is not admissible except as provided by these rules or by rules of the Supreme Court of Kentucky."

[65] *Holt v. Commonwealth*, 219 S.W.3d 731, 738 (Ky. 2007) (citing *Chapman v. California*, 386 U.S. 18 (1967)).

discovery materials since discovery had not progressed very far when Grissom and Fisher were cell-mates.

Since the prosecutor and Detective Priddy had worked together over the course of the investigation and had conferred about the discovery before trial, Detective Priddy may have had some conceivable familiarity with the progression of discovery disclosures. But it was apparent at trial that Detective Priddy did not have such personal knowledge or memory of the specific discovery timeline. The Commonwealth's Attorney resorted to highly suggestive and leading questioning during direct examination. The Commonwealth's Attorney put a purported discovery log in front of Detective Priddy on the witness stand, and then seemed to point to or otherwise suggest specific entries in the log to prompt Detective Priddy's responses. This became a pattern for that topic of inquiry. As examples of the Commonwealth's Attorney's questions:

> "Were you present in my office when we typed this up?"[66]
>
> . . .
>
> "Do you know when the next batch of information would have come into the Commonwealth's office?"[67]
>
> . . .
>
> "And I wouldn't have gotten anything else until August 3rd?"[68]
>
> . . .

---

[66] I.e., "I typed this up."

[67] I.e., "My office turned this batch of information over at this time."

[68] I.e., "These are the documents I (or my office) would have had on August 3rd."

"Were we able to note when the preliminary diagnosis from the medical examiner's office was given to me?"[69]

Fisher objected to the form of questioning and the subject matter, asserting Detective Priddy was not competent to testify to such matters without personal knowledge. The trial court directed the Commonwealth's Attorney soon after questioning began to limit the questioning to matters of which Detective Priddy had personal knowledge, but the form of questioning continued for several more lines thereafter.

For the Commonwealth's Attorney to persist in this manner was not proper and was, in fact, error. SCR 3.130–3.4(e) forbids a lawyer from asserting matters of personal knowledge unless testifying as a witness. SCR 3.130–3.7 forbids a lawyer's advocacy in a trial if the lawyer is expected to be a witness. Deliberate violations of these rules, depending on how deliberate and effective they are, can amount to prosecutorial misconduct and might require reversal.[70]

The purpose of these rules against lawyer testimony and rules like KRE 603, especially in the criminal context, is not only to avoid the obvious biases an attorney has as advocate for her own client but also because "improper suggestions, insinuations, and, especially, assertions of personal knowledge [made by a prosecutor] are apt to carry much weight against the

---

[69] I.e., "This was when I (or my office) received the preliminary diagnosis from the medical examiner's office."

[70] *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (considering whether a prosecutor's improper commentary was isolated or extensive, deliberate or accidental).

accused when they should properly carry none."[71]  In our precedent is a longstanding, sensitive standard that requires reversal when "any statement of fact outside of the evidence [is made to the jury] which may be in the slightest degree prejudicial to the rights of the accused."[72]

Fisher's claim here is similar to the Appellant's claim of error in *Holt v. Commonwealth.*[73]  This Court in *Holt* characterized the prosecutor's conduct as taking "broad liberties" in the mode of examination, whereby the Commonwealth's Attorney effectively testified "through" a witness.[74]  The Commonwealth's Attorney had met with her witness before trial to discuss the substance of his prospective testimony.  The Commonwealth's Attorney expected the witness to testify at trial that the defendant, Holt, admitted to the witness his involvement in the crime.  But on direct examination, the witness balked, not responding as the prosecutor had hoped or anticipated.  The Commonwealth's Attorney then asked outright, "Do you remember talking to me this morning? . . . Do you remember telling me that [Holt] told you that [he committed the crime]?"[75]  By doing this, the Commonwealth's Attorney was indirectly making assertions and establishing facts regarding's Holt's guilt, not

---

[71] *Holt*, at 737. *See Commonwealth v. Cook*, 7 S.W. 155, 156 (Ky. 1888) ("[B]ut it is not [the prosecutor's] duty to make a statement of fact, the credence of which is always more or less strengthened by his official position, outside of the record or evidence, which may tend in the least degree to prejudice the rights of the accused.").

[72] *Cook*, at 156.

[73] *See Holt*, 219 S.W.3d at 732.

[74] *Id.* at 733.

[75] *Id.* Actual phrasing: "Do you remember telling me that he told you that he did it?"

21

properly drawing those facts from the witness's own recollection and understanding.

This Court held reversible error in *Holt* for a prosecutor to testify to facts beyond the record through questioning, especially where the witness's testimony concerns a defendant's out-of-court admission to a crime.[76] The suspect prosecutorial conduct is a manner of questioning that "place[s] the prosecutor in the position of making a factual representation."[77] *Holt* articulates a particularly sensitive standard toward these violations.[78] The majority in *Holt* also expressly rejected the dissent's more tolerant approach toward a prosecutor's trying to "make the best of a bad situation with a difficult witness."[79] "Hardly a lawyer who has tried a case has not been disappointed by the testimony of a witness on direct examination. Our rules do not provide, however, that when the witness disappoints, the lawyer may testify in his stead."[80]

---

[76] *Id.* at 734.

[77] *Id.* at 738 ("When the prosecutor effectively became a witness and confessed guilt for the defendant as if the confession came from his lips, the error was particularly egregious.").

[78] *See id.* at 734 ("While there was substantial evidence of appellant's guilt, we are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.") (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963)) (internal quotations omitted).

[79] *Holt*, at 738.

[80] *Id.*

A review of the present trial record raises concerns. The questioning seemed intentional and persistent, and it was self-admittedly unnecessary in light of available documentary alternatives.[81] The Commonwealth's Attorney was feeding a witness facts beyond the witness's personal knowledge through leading questions and gestures, something that would have been apparent to the jury. The Commonwealth's Attorney thus improperly placed her credibility in issue as an unsworn witness against Fisher.[82] Her questioning was improper.[83] As a brief aside, the Commonwealth's Attorney might have attempted properly to refresh the witness's recollection per KRE 612. But such a writing "cannot be read [aloud] under the pretext of refreshing the witness's recollection."[84] That is what occurred here, so it cannot be affirmed as a routine refreshing of a witness's recollection.

Ultimately, while this is a close case considering the strict standard articulated in *Holt*, we carefully conclude this was not a case of reversible prosecutorial misconduct. In distinguishing the immediate case from the outcome in *Holt*, we cannot help but account for the different circumstances of

---

[81] The Commonwealth's Attorney stated in conference, "I can get a certified copy [of the discovery timeline]." Trial Recording, 10/18/19, 9:31:15 AM.

[82] *See Holt*, at 739 ("What transpired here is more than some technical violation of evidence rules or proper conduct by lawyers.").

[83] What is also troubling was that this testimony went to an important issue of fact, namely whether Grissom's testimony of Fisher's hearsay admission was true. Both the defense and the Commonwealth recognized Grissom's credibility was a considerable issue at trial. Indeed, proving the cell-mate's testimony, testimony that included a purported admission, arguably depended on proof of the discovery timeline.

[84] Lawson, § 3.20[6][c] (on KRE 612) (citing *Payne v. Zapp*, 431 S.W.2d 890, 892 (Ky. 1968)).

the case before us.  In *Holt*, the prosecutor herself practically supplied a purported confession of a criminal defendant to the jury directly and unqualifiedly when she found herself faced with a recalcitrant witness.  Here, the Commonwealth's Attorney used suggestion to work with a witness that was simply unprepared to testify to the unfamiliar details of the discovery timeline.  This Commonwealth's Attorney did not misrepresent the discovery timeline.  Available certifiable documentation would have proven the same facts Detective Priddy parroted on the stand.  Detective Priddy would likely have said the same things had she been properly prepared for trial.  In *Holt*, by contrast, the Commonwealth's Attorney's statement, made four different times, was directly contrary to the witness's testimony, as the witness persistently denied ever sharing the confession with the prosecutor.[85]

Before us now is perhaps nothing more than an ill-prepared witness. What the Commonwealth's Attorney added to Priddy's testimony did not lend the sort of central, necessary support to the Commonwealth's case as the alleged confession did in *Holt*.  The Commonwealth had otherwise overwhelming evidence against Fisher, so we are satisfied that this error did not achieve Fisher's conviction.  Though we do not retreat from the sensitive standard for this form of misconduct, attorney testimony, the context in which it occurs deserves more consideration than *Holt* seems to suggest.  Holt's circumstances presented an evident, shocking case of misconduct.

---

[85] *Holt*, at 734.

Although this questioning in the present case was improper and warrants our disapproval, Fisher is not entitled to reversal for this error. We must reiterate the higher standard to which we hold the Commonwealth's Attorneys as a matter of course.[86] So we carefully affirm the judgment notwithstanding this conduct, not because it is particularly tolerable but because we find the error happened to be harmless beyond a reasonable doubt.

**D. There is no cumulative reversible error.**

Fisher claims that even if the errors in his trial do not individually require reversal, they do require reversal in the aggregate because they cumulatively rendered the trial fundamentally unfair. Here, though, only one error has been identified, that which was found in the Commonwealth's Attorney's questioning. That error did not warrant reversal. There being no other error to aggregate with it, we need not engage in cumulative error analysis.[87]

## III.  CONCLUSION

There was only one error here, that the Commonwealth's Attorney improperly questioned her witness. That error did not render Fisher's trial fundamentally unfair. Therefore, we affirm the judgment.

All sitting. All concur.

---

[86] *Caudill v. Commonwealth*, 374 S.W.3d 301, 309 (Ky. 2012) ("Prosecutors have a special role in the judicial system. Unlike other attorneys, a prosecutor has the responsibility of a minister of justice and not simply that of an advocate.") (citing Model Rules of Prof'l Conduct R. 3.8 cmt. 1) (internal quotations omitted).

[87] *See Peacher v. Commonwealth*, 391 S.W.3d 821, 852 (Ky. 2013).

COUNSEL FOR APPELLANT:

Adam Meyer
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Aspen Caroline Carlisle Roberts
Assistant Attorney General